IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BALTIMORE SCRAP CORP.,

    *Plaintiff*,

v.

    Civil Action No. ELH-18-cv-2743

EXECUTIVE RISK SPECIALTY
INSURANCE CO., *et al*.,

    *Defendants*.

## MEMORANDUM OPINION

In this contract case, Baltimore Scrap Corporation ("Baltimore Scrap"), a scrap metal recycling business, has filed suit against Executive Risk Specialty Insurance Company ("Executive Risk") and RLI Insurance Company ("RLI"), alleging that defendants wrongfully denied insurance coverage "for a series of thefts that occurred at one of its scrap yards." ECF 1 (the "Complaint"), ¶ 1.[1] The Complaint asserts claims for breach of contract against RLI (Count I) and Executive Risk (Count II). *Id.* ¶¶ 31-44. Plaintiff has appended to the Complaint a copy of the Executive Risk Policy (ECF 1-1) as well as the RLI Policy (ECF 1-2).[2]

On October 11, 2018, Executive Risk moved to dismiss Count II of the Complaint, pursuant to Fed. R. Civ. P. 12(b)(6). ECF 16.[3] The motion is supported by memorandum of law (ECF 16-1) (collectively, the "Motion") and an exhibit. ECF 16-2 (Denial Letter, dated May 1, 2015).

---

[1] Subject matter jurisdiction is founded on diversity of citizenship, pursuant to 28 U.S.C. § 1332. ECF 1, ¶ 5. In particular, plaintiff is a Maryland corporation. *Id.* ¶¶ 2, 7. Executive Risk is a Connecticut corporation with its principal place of business in New Jersey. *Id.* ¶ 3. And, RLI is an Illinois corporation with its principal place of business in Illinois. *Id.* ¶ 4.

[2] The Executive Risk Policy is labeled as Exhibit B but docketed as ECF 1-1, and the RLI Policy is labeled as Exhibit A but docketed as ECF 1-2.

[3] RLI filed an Answer to the Complaint on March 7, 2019. ECF 24.

According to Executive Risk, plaintiff's claim is subject to Maryland's three-year statute of limitations, set forth in Md. Code (2013 Repl. Vol., 2018 Supp.), § 5-101 of the Courts and Judicial Proceedings Article ("C.J."). Because plaintiff did not file suit until September 5, 2018, *i.e.*, more than three years after Executive Risk denied coverage on May 1, 2015, Executive Risk maintains that plaintiff's suit is time-barred.

Plaintiff opposes the Motion, asserting that the Court should not consider the Denial Letter of May 1, 2015 (ECF 16-2) in ruling on the Motion. ECF 18 at 3-4. Alternatively, plaintiff argues that "its cause of action for breach of contract did not accrue on May 1, 2015." *Id.* at 7. Executive Risk has replied. ECF 19.

No hearing is necessary to resolve the Motion. Local Rule 105.6. For the reasons that follow, I shall grant the Motion (ECF 16).

## I.    Factual Background[4]

Baltimore Scrap "purchases scrap metal from industry, government, auto salvage yards, demolition contractors, and farms, as well as from the general public." *Id.* ¶ 7. The Complaint lays out one of the ways in which Baltimore Scrap purchases scrap from a customer, *id.* ¶ 8: "[A]n individual drives into the facility, has his or her vehicle weighed upon entry, receives instructions to drop the metal being purchased by Baltimore Scrap at a particular area of the scrapyard, and then returns to have the vehicle weighed again." *Id.* Then, "the customer receives a ticket with a value that is based upon the type of material in the load and the weight difference of their vehicle at departure." *Id.* The ticket is "scanned by the customer at an ATM-like machine onsite, in exchange for cash." *Id.*

---

[4] Given the procedural posture of this case, I must assume the truth of all factual allegations in the Complaint. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

On October 24, 2014, a Baltimore Scrap employee "discovered that a regular customer, Kenneth Grimes, entered the yard with a loaded truck, had the truck weighed by the company scales, but then instead of dropping the metal within the yard, proceeded to drive out a back gate." *Id*. at 9. About 30 minutes later, Mr. Grimes "returned to the yard through the back gate with an empty truck." *Id*. When Mr. Grimes "attempt[ed] to weigh-out with the empty truck" to receive compensation for the scrap, the employee "escorted" Mr. Grimes "off the premises." *Id*.

After reviewing footage from "security cameras [that] were first installed at the yard in July 2014," Baltimore Scrap discovered that "over a period of three months, Mr. Grimes entered the yard 23 times with a full truck, and after having the truck weighed, drove out a back gate on the property without unloading scrap." *Id*. ¶ 10. Each time, he "returned to the yard, and had his truck weighed again so that he was being paid for scrap that he was stealing from the yard." *Id*. In each instance, Mr. Grimes signed a "slip on behalf of his employer, Otis Elevator[.]" *Id*. ¶ 11. The Complaint asserts that "over the course of those 23 transactions," Grimes "was paid approximately $23,000 for material he did not leave at the yard." *Id*. Further, "Otis Elevator has confirmed that it did not receive any money from Mr. Grimes for the Baltimore Scrap tickets, and had no knowledge of Mr. Grimes's activity." *Id*.

As a result of the employee's discovery, the State of Maryland charged Mr. Grimes with a theft offense, and he was subsequently convicted. ECF 1, ¶ 12. As a part of his sentence, the court ordered payment of restitution, which plaintiff claims has since been paid. *Id*.[5]

However, Baltimore Scrap "reviewed all of its records for payment for Mr. Grimes from the time that he was hired by his employer, Otis Elevator, in 2011." *Id*. ¶ 13. According to the Complaint, "the tickets reflected payments for Otis Elevator's scrap," but "Otis Elevator disclosed

---

[5] The Complaint does not specify the amount of restitution.

that they never received cash on any Baltimore Scrap tickets from Mr. Grimes." *Id*. In total, Baltimore Scrap claims that it "discovered approximately $200,000 worth of scrap that Mr. Grimes stole out the back door of the property . . . ." *Id*. ¶ 14.

Thereafter, "Baltimore Scrap brought a civil suit for fraud against Mr. Grimes." *Id*. ¶ 15. The Complaint asserts, *id*. ¶ 16: "On March 7, 2016, a Baltimore Circuit Court jury found Mr. Grimes liable for fraud, and a judgment was entered against him in the amount of $196,081.05 plus costs" (the "Grimes Loss"). And, "Mr. Grimes has begun making small payments on the judgment." *Id*. In pursuing legal action against Mr. Grimes, Baltimore Scrap avers that it has "incurred legal costs in excess of $55,000 . . . ." *Id*. ¶ 17.

At the relevant times, Baltimore Scrap "was covered under a comprehensive insurance program," including a "Crime Policy with Executive Risk" (ECF 1-1) and a "Commercial Property Coverage Policy with RLI" (ECF 1-2). ECF 1, ¶ 18.[6] The Executive Risk Policy "had a policy period of October 1, 2014 through October 1, 2016." *Id*. ¶ 23. It included, *inter alia*, the "Crime Coverage Part," which provided "Premises Coverage" under "Insuring Clause (B)." ECF 1-1 at 3-4.

The provision states, in relevant part, that Executive Risk "shall pay" Baltimore Scrap "for direct loss . . . resulting from: (1) **Robbery, Safe Burglary**, or unlawful taking of **Money** or **Securities** committed by a **Third Party**; or (2) actual destruction or disappearance of **Money** or **Securities**, within or from the **Premises** . . . ." *Id*. at 4. Coverage also included "(3) loss of or damage to **Property** which results from **Robbery** or attempted **Robbery** within the **Premises**; . . . committed by a **Third Party**." *Id*.

---

[6] The RLI Policy covered the period of 10/1/2012 through 10/02/2013, and it was subsequently renewed for 2013-2014 and 2014-2015. ECF 1, ¶ 19.

Further, in the Section titled "Exclusions," the Executive Risk Policy contains the following provision in Exclusion (A)(11), *id*. at 10:

> <u>Voluntary Exchange or Purchase</u>
> loss due to an **Insured** knowingly having given or surrendered **Money, Securities** or **Property** in any exchange or purchase with a **Third Party**, not in collusion with an **Employee**, provided that this Exclusion (A)(11) shall not apply to otherwise covered loss . . . .

The Executive Risk Policy defines "Third Party" as "a natural person other than: (A) an **Employee**; or (B) a natural person acting in collusion with an **Employee**." *Id*. at 8. And, "Robbery" is defined as "the unlawful taking of **Money**, **Securities** or **Property** from the custody of an **Employee** or other person (except a person acting as a watchman, porter or janitor) duly authorized by an **Organization** to have custody of such **Money**, **Securities** or **Property**, by violence or threat of violence, committed in the presence and cognization of such **Employee** or other person." *Id*.

Under the Policy, "Theft" is defined as "the unlawful taking of **Money, Securities** or **Property** to the deprivation of: (A) an **Insured**, solely for the purposes of Insuring Clause (A), Employee Theft Coverage; or (B) a **Client**, solely for the purposes of Insuring Clause (I), Client Coverage." *Id*. Insuring Clause (A) provides that Executive Risk "shall pay . . . for direct loss of **Money, Securities** or **Property** sustained by" Baltimore Scrap "resulting from **Theft** or **Forgery** committed by an **Employee** acting alone or in collusion with others." *Id*. at 4. And, Insuring Clause (I) states that Executive risk "shall pay" Baltimore Scrap "for direct loss of **Money, Securities** or **Property** sustained by a **Client** resulting from **Theft** or **Forgery** committed by an **Employee** not in collusion with such **Client's** employees." *Id*. at 5.

The Executive Risk Policy also includes an "Expense Coverage" provision. *Id.* It requires Executive Risk to pay Baltimore Scrap for "Investigative Expenses resulting from any direct loss covered under Insuring Clauses . . . ." *Id.*

Plaintiff maintains that "the Grimes Loss necessarily constitutes a loss" under both policies. ECF 1, ¶ 26. Further, plaintiff asserts that it submitted timely notice of the Grimes Loss to both insurers. *Id.* ¶ 28. However, according to plaintiff, the insurers have wrongfully denied coverage for the Grimes Loss." *Id.* ¶ 29.

Additional facts are included, *infra*.

## II. Legal Standards

### A. Rule 12(b)(6)

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Paradise Wire & Cable Defined Benefit Pension Fund Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. ___, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted). The rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Put another way, "an unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440

(4th Cir. 2011) (citations omitted); *see Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 423 (2018); *Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Comm'w of Va.*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts generally do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (quotation marks and citation omitted). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 533 F.3d 334, 336 (4th Cir. 2009); *see also U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 148 (4th Cir. 2014). However, because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis in *Goodman*); *see Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005).

## B.    Exhibits

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger v. U.S. Airways,* 510 F.3d 442, 450 (4th Cir. 2007). "Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Under limited circumstances, however, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb*, 791 F.3d at 508.

In particular, a court may consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166; *see also* Fed. R. Civ. P. 10(c); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Paradise Wire & Cable*, 918 F.3d at 318. However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)).

Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for

purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (citation omitted); *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original). *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

The Executive Risk Policy (ECF 1-1) is attached to the Complaint and integral to it. Therefore, I may consider it.

Executive Risk attached its Denial Letter of May 1, 2015 (ECF 16-2) to its Motion. It is addressed to Jim Burnett of Baltimore Scrap and signed by Dominique Sena-DiDonato of Chubb & Son, a division of Executive Risk. *Id.* at 2, 4.

Notably, Baltimore Scrap did not attach the Denial Letter to the Complaint. Nevertheless, Executive Risk contends that this Court may consider the letter to resolve the Motion, "because Baltimore Scrap relied upon the letter to frame its complaint and state its cause of action." ECF 16-1 at 4 (citing *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). In response, Baltimore Scrap argues that the Denial Letter "cannot be considered by the Court" because it is "neither attached to nor referenced in the complaint[.]" ECF 18 at 4.

In my view, the Denial Letter undergirds the Complaint; it forms the basis of plaintiff's breach of contract claim against Executive Risk. For example, the Complaint's opening paragraph explicitly states that plaintiff "seeks damages resulting from the denials of insurance coverage . . . ." ECF 1, ¶ 1. And, the Complaint repeatedly asserts that defendants "wrongfully denied coverage for the Grimes Loss." *Id.* ¶¶ 1, 29, 36, 43. Further, plaintiff does not dispute the document's authenticity. *See* ECF 18 at 5.

Plaintiff cannot rely on the Denial Letter to assert its claim and then seek to foreclose the Court's consideration of it merely by failing to attach it. Therefore, at this juncture, I may consider the Denial Letter, without converting the motion to one for summary judgment, as it is integral to the Complaint. *See Douglass v. NTI-TSS, Inc.*, 632 F. Supp. 2d 486, 490 n.1 (D. Md. 2009) (Blake, J.).

Of relevance here, the Denial Letter states, in pertinent part, ECF 16-2 at 2 - 4:

The purpose of this letter is to inform you of our coverage analysis with respect to this claim . . . . Based on our review, we have concluded that the claim is not covered under the Crime Coverage Part as more fully explained below.

According to the information provided to date, we understand the facts to be as follows: Baltimore Scrap Corp. purchases scrap from various entities. A truck driver from Otis Elevator presented his truck to be weighed on Baltimore's scale for purposes of determining the weight of the vehicle's contents for its sale to Baltimore. Once weighed, the Otis Elevator driver was instructed to empty the load contents at the back of Baltimore's facility and come back to the scale to get

weighed. The driver would receive payment for the value of the difference in weight. Unbeknownst to Baltimore at the time, the driver did not unload the contents of the truck at the facility. Rather, he took the truck off the premises, unloaded the contents at a different location and returned with an empty truck. The driver for Otis Elevator did this several times before Baltimore discovered what had happened. Baltimore believes that the scheme caused it a loss of $240,000 approximately. The Otis Elevator driver was charged by authorities and has already repaid $23,000 to Baltimore Scrap Corp. There is no information to date to suggest a Baltimore Scrap Corp. employee may have been involved.

. . . . It appears from the information available to date that the loss in this case occurred in the course of an exchange of scrap for Money. Accordingly, we consider this to be a loss of Money for purposes of our coverage analysis. Although it does not appear that there was a loss of Property, it should be noted that the Premises Coverage will only afford coverage for a loss of Property where there is an attempted or actual Robbery on Premises. In this case, there was no violence or threat of violence involved in these circumstances. Nonetheless, regardless of whether this loss is considered a loss of Money or Property, the loss is excluded pursuant to Exclusion (A) (11) as it was due to a knowing surrender of Money or Property in exchange with the Otis Elevator driver.

Executive Risk Specialty concludes that there is no covered loss under the Crime Coverage Part. Executive Risk Specialty's position with respect to this matter is based upon the information provided to date. Should additional or new information become available or if you disagree with Executive Risk Specialty's coverage position, please contact us immediately so we make [sic] take your submission under consideration. . . .

## C.    Choice of Law

Jurisdiction in this Court is founded on diversity of citizenship. 28 U.S.C. § 1332. The parties seem to assume, without discussion, that Maryland law applies.

"When choosing the applicable state substantive law while exercising diversity or supplemental jurisdiction, a federal district court applies the choice of law rules of the forum state." *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 696 (D. Md. 2011); *see also Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007); *Baker v. Antwerpen Motorcars, Ltd.*, 807 F. Supp. 2d 386, 389 n.13 (D. Md. 2011). This principle extends to limitations. *See Brown v. Am. Broad. Co., Inc.*, 704 F.2d 1296, 1299 (4th Cir. 1983); *see also Coe*

*v. Thermasol, Inc.*, 785 F.2d 511, 514 n.5 (4th Cir. 1986) (noting that "federal courts sitting in diversity apply the forum state's statute of limitations"). Maryland is, of course, the forum state. Therefore, I shall apply Maryland's choice of law rules.

As to contract claims, Maryland applies the law of the state in which the contract was formed ("*lex loci contractus*"), unless the parties to the contract agreed to be bound by the law of another state. *See, e.g. Cunningham v. Feinberg*, 441 Md. 310, 326, 107 A.3d 1194, 1204 (2015); *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 618, 925 A.2d 636, 648 (2007); *Am. Motorists Ins. Co. v. ARTRA Grp., Inc.*, 338 Md. 560, 573, 659 A.2d 1295, 1301 (1995); *TIG Ins. Co. v. Monongahela Power Co.*, 209 Md. App. 146, 161, 58 A.3d 497, 507 (2012), *aff'd*, 437 Md. 372, 86 A.3d 1245 (2014). "For choice-of-law purposes, a contract is made where the last act necessary to make the contract binding occurs." *Konover Prop. Tr., Inc. v. WHE Assocs.*, 142 Md. App. 476, 490, 790 A.2d 720, 728 (2002) (citing *Commercial Union Ins. Co. v. Porter Hayden Co.*, 116 Md. App. 605, 672, 698 A.2d 1167, 1200 (1997), *cert. denied*, 348 Md. 205, 703 A.2d 147 (1997)).

It appears that the contract was formed in Maryland, although the parties do not makes this expressly clear. I shall apply Maryland law.

### III.    Discussion

Executive Risk has moved to dismiss Count II of the Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Baltimore Scrap "failed to timely file suit within the three-year statute of limitations as required by" C.J. § 5–101. ECF 16 at 1. According to Executive Risk, the "statute of limitations accrues no later than the date on which the insurer denies coverage," *i.e.*, May 1, 2015. ECF 16-1 at 2. Therefore, defendant argues that limitations expired on May 1, 2018. *Id*. However, Baltimore Scrap did not "file suit until September 5, 2018 – over four months after the statute of limitations expired." *Id*.

Baltimore Scrap counters that limitations did not accrue "until the conclusion of the civil litigation [against Grimes] on May 7, 2016." ECF 18 at 6. According to plaintiff, only then was it "determined that there was a loss of money" and "the value of the loss was established." *Id.*

As noted, the defense of limitations is ordinarily not considered in the context of a motion to dismiss. *Edwards*, 178 F.3d at 243; *Miller v. Pac. Shore Funding*, 224 F. Supp. 2d 977, 985 (D. Md. 2002), *aff'd*, 92 F. App'x 933 (4th Cir. 2004). However, "[w]hen it appears on the face of the complaint that the limitation period has run, a defendant may properly assert a limitations defense through a Rule 12(b)(6) motion to dismiss." *Miller*, 224 F. Supp. 2d at 985; *see Pressley*, 553 F.3d at 336; *Goodman*, 494 F.3d at 464; *Pilgrim's Pride Corp.*, 395 F.3d at 474. In this case, as noted, plaintiff references the insurer's denial of its claims in the Complaint. And, with its Motion, the insurer has provided a copy of its Denial Letter of May 1, 2015, which this Court may consider.

In the ordinary course, Maryland law requires that "[a] civil action shall be filed within three years from the date it accrues unless another provision of the Code provides" otherwise. *See* C.J. 5–101. Statutes of limitations "ensure fairness to defendants by encouraging promptness in bringing claims, thus avoiding problems that may stem from delay. . . ." *Hecht v. Resolution Tr. Corp.*, 333 Md. 324, 333, 635 A.2d 394, 399 (1994). Statutes of limitation allow "individuals the ability to plan for the future without the indefinite threat of potential liability." *Id.*

The Maryland Court of Appeals has explained: "Limitations statutes . . . are designed to (1) provide adequate time for diligent plaintiffs to file suit, (2) grant repose to defendants when plaintiffs have tarried for an unreasonable period of time, and (3) serve society by promoting judicial economy." *Georgia-Pacific Corp. v. Benjamin*, 394 Md. 59, 85, 904 A.2d 511, 526 (2006); *see Pierce v. Johns-Manville Sales Corp.*, 296 Md. 656, 665, 464 A.2d 1020, 1026 (1983). Generally, "the party raising a statute of limitations defense has the burden of proving that the

cause of action accrued prior to the statutory time limit for filing the suit." *Newell v. Richards*, 323 Md. 717, 725, 594 A.2d 1152, 1156 (1991).

In Maryland, actions for breach of contract are generally governed by Maryland's three-year statute of limitations. *See Dual Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 169, 857 A.2d 1095, 1105 (2004); *Catholic Univ. of Am. v. Bragunier Masonry Contractors, Inc.*, 139 Md. App. 277, 297, 775 A.2d 458, 469 (2001), *aff'd*, 368 Md. 608, 796 A.2d 744 (2002). Notably, "a cause of action for breach of contract accrues when the contract is breached, and when the 'breach was or should have been discovered.'" *Boyd v. Bowen*, 145 Md. App. 635, 669, 806 A.2d 314, 333 (2002) (quoting *Jones v. Hyatt Ins. Agency, Inc.*, 356 Md. 639, 648, 741 A.2d 1099 (1999)); *see also Goodman*, 494 F.3d at 465; *Millstone as Tr. of Montgomery Scrap Corp. Profit Sharing Tr. v. St. Paul Travelers*, 183 Md. App. 505, 512, 962 A.2d 432, 437 (2008), *aff'd*, 412 Md 424, 430, 987 A.2d 116, 120 (2010).

An action typically accrues in Maryland at the time of the wrong, unless a judicial or legislative exception provides otherwise. *Poole v. Coakley & Williams Const., Inc.*, 423 Md. 91, 131, 31 A.3d 212, 236 (2011). "[T]he question of accrual in C.J. § 5-101 is left to judicial determination, unless the determination rests on the resolution of disputed facts regarding discovery of the wrong." *Id.* at 131, 31 A.3d at 236; *see Bank of New York v. Sheff*, 382 Md. 235, 244, 854 A.2d 1269, 1275 (2004) (stating that summary judgment may be appropriate if there is no dispute of material fact as to whether plaintiff was on inquiry notice more than three years before suit was file); *Frederick Road Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 95, 756 A.2d 963, 973 (2000) (explaining that the determination of accrual "may be based solely on law, solely on fact, or on a combination of law and fact, and is reached after careful consideration of the purpose of the statute and the facts to which it is applied").

But, "[r]ecognizing the unfairness inherent in charging a plaintiff with slumbering on his rights where it was not reasonably possible to have obtained notice of the nature and cause of an injury," Maryland has adopted the so-called discovery rule to determine the date of accrual. *See Sheff*, 382 Md. at 244, 854 A.2d at 1275; *Frederick Road Ltd. P'ship*, 360 Md. at 95, 756 A.2d at 973. "The discovery rule acts to balance principles of fairness and judicial economy in those situations in which a diligent plaintiff may be unaware of an injury or harm during the statutory period." *Dual Inc.*, 383 Md. at 167, 857 A.2d at 1104.

Under the discovery rule, "a plaintiff's cause of action accrues when the plaintiff knows or reasonably should have known of the wrong." *Brown v. Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.*, 731 F. Supp. 2d 443, 449 (D. Md. 2010) (citing *Lumsden v. Design Tech Builders, Inc.,* 358 Md. 435, 444, 749 A.2d 796, 801 (2000)), *aff'd*, 495 F. App'x 350 (4th Cir. 2012); *see Benjamin*, 394 Md. at 75, 904 A.2d at 521. However, "[t]his standard ... does not require actual knowledge on the part of the plaintiff, but may be satisfied if the plaintiff is on 'inquiry notice." *Dual Inc.*, 383 Md. at 167–68, 857 A.2d at 1104 (citing *Am. Gen. Assurance Co. v. Pappano,* 374 Md. 339, 351, 822 A.2d 1212, 1219 (2003); *Doe v. Archdiocese of Washington,* 114 Md. App. 169, 188–89, 689 A.2d 634, 644 (1997)).

A plaintiff is on inquiry notice when the plaintiff "possesses 'facts sufficient to cause a reasonable person to investigate further, and ... a diligent investigation would have revealed that the plaintiffs were victims of ... the alleged tort.'" *Dual Inc.*, 383 Md. at 168, 857 A.2d at 1104 (quoting *Pennwalt Corp. v. Nasios*, 314 Md. 433, 448–49, 550 A.2d 1155, 1159 (1988)) (alterations in original). Inquiry notice must be actual notice, either express or implied. *Poffenberger v. Risser*, 290 Md. 631, 637, 431 A.2d 677, 681 (1981). But, "[c]onstructive notice

or knowledge will not suffice for inquiry notice." *Benjamin*, 394 Md. at 89, 904 A.2d at 529; *see Poffenberger*, 290 Md. at 637, 431 A.2d at 681.

Application of the discovery rule involves a two-prong test. The Maryland Court of Appeals has explained that the first prong, "sufficiency of the actual knowledge to put the claimant on inquiry notice," concerns "the nature and extent of actual knowledge necessary to cause an ordinarily diligent plaintiff to make an inquiry or investigation that an injury has been sustained." *Benjamin*, 394 Md. at 89, 904 A.2d at 529; *see O'Hara v. Kovens*, 305 Md. 280, 302, 503 A.2d 1313, 1324 (1986); *Pennwalt*, 314 Md. at 453, 550 A.2d at 1165–66 (noting that a plaintiff must have notice of the nature and cause of his or her injury). As indicated, with regard to inquiry notice, "a person must have actual notice, either express or implied. Express knowledge is direct, whether written or oral, from sources 'cognizant of the fact[s].'" *Benjamin*, 394 Md. at 89, 904 A.2d at 529 (quoting *Poffenberger*, 290 Md. at 636–37, 431 A.2d at 681) (citation omitted). Implied notice occurs "when a plaintiff gains knowledge sufficient to prompt a reasonable person to inquire further." *Pennwalt*, 314 Md. at 447, 550 A.2d at 1163.

The second prong, "the sufficiency of the knowledge that would have resulted from a reasonable investigation," requires that after a reasonable investigation of facts, a reasonably diligent inquiry would have disclosed whether there is a causal connection between the injury and the wrongdoing. *Benjamin*, 94 Md. at 90, 904 A.2d at 529; *see Pennwalt*, 314 Md. at 452, 550 A.2d at 1165; *Baysinger v. Schmid*, 307 Md. 361, 367–68, 514 A.2d 1, 4 (1986). "The requirement for inquiry notice is that if a person investigates diligently, the causal connection would be revealed." *Benjamin*, 94 Md. at 90, 904 A.2d at 529.

Executive Risk contends that plaintiff's cause of action accrued on May 1, 2015, when it denied coverage to Baltimore Scrap and, in doing so, allegedly breached the Executive Risk Policy.

*See* ECF 16-2; ECF 16-1 at 2. In support of its position, Executive Risk relies, *inter alia*, on *Hill v. State Farm and Casualty Company*, RDB-15-00065, 2015 WL 5032019, at *3 (D. Md. Aug. 24, 2015).

In *Hill*, the Hills filed a breach of contract action against the insurer, seeking coverage under a homeowner's insurance policy. *Id.* at *1. The insurer moved to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(6), asserting that plaintiffs failed to file suit within three years of the insurer's denial of coverage. *Id.* at *3. Judge Bennett granted the insurer's motion to dismiss on the basis that the plaintiffs received the denial letter more than three years before they filed suit. *Id.* He explained, *id.*:

> In this case, State Farm allegedly breached the insurance contract on January 19, 2011, when it informed the Hills that it would deny coverage for any losses stemming from the fire.[] To avoid running afoul of the three-year statute of limitations, the Hills were required to file the present action before or on January 19, 2014. Yet, they did not file the subject Complaint until December 3, 2014, nearly eleven months after the expiration of the statutory period. . . . Due to this clear failure to comply with the Maryland state statute of limitations under Section 5–101, this breach of contract claim is time-barred. Accordingly, Plaintiffs' claim is DISMISSED WITH PREJUDICE.

Plaintiff counters that the Denial Letter "d[id] not trigger the running of the statute of limitation[s] because Baltimore Scrap's breach of contract claim did not accrue in May 2015." ECF 18 at 5. Rather, plaintiff maintains that the accrual date is May 7, 2016, when "Grimes was found liable for fraud and a judgment was entered against him in the amount of $196,081.05 plus costs." ECF 18 at 6.

Baltimore Scrap notes that, with regard to defendant's denial, Executive Risk relied on information available at that time. But, plaintiff points out that it now has new information. *Id.* at 5. Plaintiff posits, *id.* at 6: "Where there is underlying litigation that will resolve factual issues relevant to the insurance coverage dispute, the statute of limitations begins to run from the date of

the resolution of the underlying case." *Id.* (citing *Vigilant Ins. Co. v. Luppino*, 352 Md. 481, 483, 723 A.2d 14, 14 (1999)).

According to plaintiff, the Denial Letter "raised the factual issue as to whether Baltimore Scrap voluntarily parted with money" or, instead, whether Mr. Grimes defrauded Baltimore Scrap. ECF 18 at 6. In its view, limitations did not accrue until this factual issue was resolved in the underlying litigation brought by plaintiff against Mr. Grimes. *Id.* Only at that time were liability and damages established, according to plaintiff. *Id.* at 5.

In addition, plaintiff argues that it was not required to file a declaratory judgment action to determine coverage before filing suit against Mr. Grimes. ECF 18 at 6-7. Plaintiff quotes *Luppino*, 352 Md. at 482, 723 A.2d at 19, for the proposition that "'the insured should not be prejudiced by his or her failure to seek a declaratory judgment prior to the trial of the underlying tort suit." ECF 18 at 7. Therefore, it maintains that limitations did not begin "'to run against the insured because the insured failed to bring a pre-tort trial declaratory judgment action.'" *Id.*

Plaintiff's reliance on *Luppino* is misplaced. The case presented "the question of when the statute of limitations began to run on an insured's claim that an insurer breached its duty to defend the insured in a tort suit by a third party against the insured." *Id.* at 483, 723 A.2d at 14.

In *Luppino*, the plaintiff, Luppino, "was insured under a homeowner's liability insurance policy," which "provided coverage for property damage as well as personal liability." *Luppino*, 352 Md. at 483, 723 A.2d at 15. The policy's personal liability provisions "provided coverage for damages which the insured was legally obligated to pay for personal injury or property damage to a third party." *Id.*

In February 1989, third parties filed suit against Luppino. *Id.* at 485, 723 A.2d at 16. Soon after, Luppino referred a claim to his insurer, requesting "a defense under the personal liability

provisions of the policy." *Id*. at 485, 723 A.2d at 16. In a letter of October 1990, the insurer denied coverage, defense, and indemnity. *Id*. However, the insurer reserved the right "to amend this letter if and when new information is developed or obtained showing that any policy provision may have been violated . . . ." *Id.* at 486, 723 A.2d at 16.

Luppino defended the action at his own expense, resulting in a judgment against him that was upheld on appeal in September 1994. *Id*. at 485, 723 A.2d at 16 (citing *Luppino v. Gray*, 336 Md. 194, 647 A.3d 429 (1994)). In May 1994, while the appeal was pending, the plaintiff filed a complaint against his insurer, alleging breach of the duty to defend, as well as breach of the duty to indemnify. *Luppino*, 352 Md. at 487, 723 A.2d at 16.

With regard to the duty to indemnify, the Maryland Court of Special Appeals (Wilner, J.) held that "the duty did not arise, and thus Luppino's cause of action for breach of the duty did not accrue, until judgment was entered against Luppino in the underlying suit." *Id.* at 487-88, 723 A.2d at 17. Luppino became legally obligated to pay only when judgment was entered against him. *Id.* at 488, 723 A.2d at 17. Notably, the Maryland Court of Appeals did not grant certiorari as to that issue. *Id.*

On the issue of whether the three-year statute of limitations barred plaintiff's cause of action for breach of the duty to defend, the Maryland Court of Appeals recognized a "'continuation of events'" exception to the "'strict date of the wrong rule of accrual.'" *Id*. at 490, 723 A.2d at 18 (quoting *Hecht v. Resolution Trust*, 333 Md. 324, 337, 635 A.2d 394, 401 (1994)) (internal quotation marks omitted). The *Luppino* Court reasoned that the breach of duty to defend occurred in October 1990, when the insurer denied coverage. *Id*. at 489, 723 A.2d at 18. But, it observed that "the duty to defend, by its very nature, is a continuing one that extends throughout the tort suit by the third party against the insured." *Id*. Accordingly, "an insured would ordinarily have three

20

years from the termination of the litigation to sue the insurer for compensation for the legal services which the insured had been forced to pay for." *Luppino*, 352 Md. at 490, 723 A.2d at 18.

Noting the disfavored nature of declaratory judgment actions to determine the breadth of coverage under a liability insurance policy, the court concluded that "the insured should not be prejudiced by his or her failure to seek a declaratory judgment prior to the trial of the underlying tort suit. Consequently, limitations should not begin to run against the insured because the insured failed to bring a pre-tort trial declaratory judgment action." *Id*. at 494, 723 A.2d at 20.

*Luppino* involved a third-party liability dispute based on the insurer's promise to defend the insured in ongoing litigation. *Id*. at 489, 723 A.2d at 18. Here, the case involves a first-party controversy, *i.e.*, "'a promise by the insurer to pay its own insured.'" *Bausch & Lomb Inc. v. Utica Mut. Ins. Co.*, 355 Md. 566, 583, 735 A.2d 1081, 1090 (1999) (quoting *Reese v. State Farm Mut. Auto. Ins.*, 285 Md. 548, 552, 403 A.2d 1229, 1231 (1979)). Plaintiff's claim for breach of a first-party policy does not implicate a duty to defend ongoing litigation.

The Fourth Circuit recently distinguished *Luppino* in *Curry v. Trustmark Insurance Company*, 600 F. App'x 877, 879 (4th Cir. 2015). Although the *Curry* case is factually distinguishable, the analysis is informative. It leads to the conclusion that the claim here accrued on May 1, 2015, *i.e.*, when Executive Risk denied coverage.

In *Curry*, 600 F. App'x at 879, the plaintiff owned a disability insurance policy. *Id*. Following an injury, he applied for disability benefits from the insurer. *Id*. The insurer began paying benefits while seeking to establish whether the plaintiff was disabled, and eventually directed the plaintiff to undergo an Independent Medical Examination ("IME"), as allowed by the insurance policy. *Id*. Because the plaintiff refused to submit to the IME, the insurer denied any

additional benefits.  *Id*.  The plaintiff sued more than three years after the denial of additional benefits, but within three years of the time the insurer formally closed the claim.  *Id*.

The district court found that not all of the plaintiff's claims were barred by limitations because the insurer "breached the contract each time [it] failed to pay benefits for a period during which Plaintiff was disabled."  *Curry v. Trustmark Ins. Co.*, JKB-11-2069, 2013 WL 3716413, at *4 (D. Md. July 15, 2013).  The district court reasoned that because "[e]ach failure to pay monthly benefits . . . is a separate and independent breach," claims for payments within the statute of limitations were timely. *Id.*

The Fourth Circuit disagreed.  It defined the issue as "whether the disability benefits [were] 'owed in the first place.'"  *Id.* at 881 (citation omitted).  Because the alleged breach of contract arose from the insurer's denial that it owed the plaintiff any benefits at all, the *Curry* Court determined that the breach was not a continuing one and the plaintiff's claim accrued at the point of the initial denial, *i.e.*, when the insurer denied additional benefits.  *Id.*

Such an analysis leads to the same conclusion here.  As Executive Risk argues, "Baltimore Scrap knew of its right to file suit in May 2015, but chose not to do so.  Instead, it chose to sue another party.  That action did not trigger a duty to defend, as in *Luppino*."  ECF 19 at 8.

If plaintiff had the *right* to sue defendant when it received the Denial Letter, it follows that it must also have been subject to the statute of limitations as of that time.  *See Poffenberger v. Risser*, 46 Md. App. 600, 601, 421 A.2d 90, 91 (1980) ("[W]henever one person may sue another a cause of action has accrued and the statute begins to run"), *rev'd on other grounds*, 290 Md. 631, 431 A.2d 677 (1981).  The insurance contract did not require plaintiff to first pursue a claim against the thief.  Nor did it bar plaintiff from "'filing suit [against the insurer] prophylactically to guard against the running of the statute of limitations.'"  *Shailendra Kumar, P.A. v. Dhanda*, 426 Md.

185, 197-98, 43 A.3d 1029, 1036 (2012) (concluding that contractual obligation to participate in non-binding arbitration did not toll limitations, and holding that cause of action accrued more than three years before suit was filed).

Plaintiff's cause of action for breach of contract accrued on May 1, 2015, when Executive Risk notified plaintiff of the denial of coverage. *See* ECF 16-2. Limitations was not tolled merely because the insurer indicated that the insured should contact the insurer with "additional or new information . . . ." ECF 16-2 at 4. Refusal to pay a benefit "when due is sufficient to constitute a breach." *Mobley v. New York Life Ins. Co.*, 295 U.S. 632, 638 (1935). The insurer's assertion that it might reconsider if additional information were presented did not deprive plaintiff of its right to sue to enforce the contract based on the denial of the claim.

Because plaintiff did not file suit until September 5, 2018, Count II is subject to dismissal based on limitations.

## IV.     Conclusion

For the reasons stated above, the Motion (ECF 16) is GRANTED. I shall dismiss Count II, with prejudice.

An Order follows, consistent with this Memorandum Opinion.


Date: June 17, 2019                                 _____/s/_____
                                                    Ellen L. Hollander
                                                    United States District Judge